IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID J. ENGELHARDT, | ) | CASE NO. 3:13 CV 482 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.      Nature of the case and proceedings**

Before me is an action by David J. Engelhardt under 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security denying his application

for supplemental security income ("SSI").[1]

The parties have consented to my jurisdiction.[2] The Commissioner has answered[3] and

filed the transcript of the administrative record.[4]

---

[1] ECF # 1.

[2] ECF # 18.

[3] ECF # 12.

[4] ECF # 13.

Under the requirements of my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9]

## B.    The Commissioner's decision

Engelhardt, who was 47 years old at the time of the decision,[10] has a GED and did some minimal work as a tree trimmer, but not enough to qualify as past relevant work.[11] Beginning at age 24, the majority of Engelhardt's adult life has been spent in various prisons for lengthy periods on various charges.[12] He has been living with his brother and sister-in-law since 2009, but was incarcerated for a few months in 2010.[13] He has a long history of substance abuse, including cocaine and marijuana.[14]

The Administrative Law Judge ("ALJ") found that Engelhardt had the following severe impairments: s/p left ankle sprain; history of hematoma after a concussion,

---

[5] ECF # 3.

[6] ECF # 14.

[7] ECF # 21 (Engelhardt's brief), ECF # 19-1 (Commissioner's brief); ECF # 21 (Engelhardt's reply brief).

[8] ECF # 17-1 at 3-13 (Engelhardt's charts), ECF # 19-2 (Commissioner's charts).

[9] ECF # 17-1 at 1-2 (Engelhardt's fact sheet).

[10] ECF # 13, Transcript of Proceedings ("Tr.") at 55.

[11] *Id.* at 55, 139.

[12] *Id.* at 205-08.

[13] *Id.* at 17-19.

[14] Id. at 207.

degeneration of cervical spine and spondylosis of lumbar spine; bipolar disorder; and poly-substance abuse in remission.[15] The ALJ decided that the relevant impairments did not meet or equal a listing, including the listing at 12.04 for depressive syndrome, and at 12.09 for effects of alcohol abuse.[16] The ALJ then made the following finding regarding Engelhardt's residual functional capacity:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he is limited to simple, repetitive tasks, due to bipolar disorder.[17]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing incorporating the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Engelhardt could perform.[18] The ALJ, therefore, found Engelhardt not under a disability.[19]

The Appeals Council denied Engelhardt's request for review of the ALJ's decision.[20] With this denial, the ALJ's decision became the final decision of the Commissioner.[21]

---

[15] *Id.* at 49.

[16] *Id.* at 49-51.

[17] *Id.* at 51.

[18] *Id.* at 56.

[19] *Id.*

[20] *Id.* at 1-4.

[21] *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011); 20 C.F.R. § 416.1481.

**C.**    **Issues presented**

Engelhardt asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Engelhardt presents three issues for judicial review:

- The ALJ found that Engelhardt had the RFC for light work limited to simple, repetitive tasks. Does substantial evidence support that finding?

- The ALJ found Engelhardt's statements concerning the severity of his pain and his physical and mental limitations less than credible. Does substantial evidence support that finding?

- Should the decision of the Commissioner be reversed and the case remanded for reconsideration under sentence six based on evidence submitted to the Appeals Council but not to the ALJ and further evidence submitted for the first time on judicial review?

**D.**    **Disposition**

For the reasons that follow, I will conclude that the ALJ's no-disability finding is not supported by substantial evidence. Thus, the denial of Engelhardt's application will be reversed and the matter remanded. As explained below, the remand will not encompass the medical evidence presented for the first time after the ALJ's decision to either the Appeals Council or this Court.

## Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[22]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[23] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[24]

---

[22] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[23] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[24] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.      *Good reasons requirement/treating source rule***

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[25]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[26]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[27] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[28]

---

[25] 20 C.F.R. § 404.1527(d)(2).

[26] *Id.*

[27] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[28] *Id.*

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[29] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[30] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[31] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[32]

In *Wilson v. Commissioner of Social Security*,[33] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[34] The court noted that the regulation expressly contains a "good reasons" requirement.[35] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

---

[29] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[30] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[31] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[32] *Id.* at 535.

[33] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[34] *Id.* at 544.

[35] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[36]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[37] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[38] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[39] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[40]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[41] recently emphasized that the regulations require two distinct analyses, applying two separate

---

[36] *Id.* at 546.

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (2013).

standards, in assessing the opinions of treating sources.[42] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[43] *Blakley v. Commissioner of Social Security*,[44] and *Hensley v. Astrue*.[45]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[46] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[47] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[48] The treating source's non-controlling status

---

[42] *Id.* at 375-76.

[43] *Rogers*, 486 F.3d at 242.

[44] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[45] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[46] *Gayheart*, 710 F.3d at 376.

[47] *Id.*

[48] *Id.*

notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[49]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[50] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[51] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[52] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[53] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[54]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[55]

---

[49] *Rogers*, 486 F.3d at 242.

[50] *Gayheart*, 710 F.3d at 376.

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.*

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[56] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[57] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[58] or that objective medical evidence does not support that opinion.[59]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[60] The Commissioner's *post hoc* arguments on judicial review are immaterial.[61]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such

---

[56] *Rogers*, 486 F.3d 234 at 242.

[57] *Blakley*, 581 F.3d at 406-07.

[58] *Hensley*, 573 F.3d at 266-67.

[59] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[60] *Blakley*, 581 F.3d at 407.

[61] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[62]

- the rejection or discounting of the weight of a treating source without assigning weight,[63]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[64]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[65]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[66] and

---

[62] *Blakley*, 581 F.3d at 407-08.

[63] *Id.* at 408.

[64] *Id.*

[65] *Id.* at 409.

[66] *Hensley*, 573 F.3d at 266-67.

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[67]

The Sixth Circuit in *Blakley*[68] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[69] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[70]

In *Cole v. Astrue*,[71] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[72]

---

[67] *Friend*, 375 F. App'x at 551-52.

[68] *Blakley*, 581 F.3d 399.

[69] *Id*. at 409-10.

[70] *Id*. at 410.

[71] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[72] *Id.* at 940.

### 3.    *Non-treating but acceptable medical source opinions*

Although not entitled to controlling weight under the regulations, the ALJ must weigh the opinions from non-treating and non-examining sources based on any examining relationship with the claimant, specialization, consistency, and supportability, unless the treating-source opinion receives controlling weight.[73] The ALJ may consider other factors "which tend to support or contradict" such opinions.[74] A properly balanced analysis of the evidence might permit an ALJ to defer more to the opinions of non-treating sources than to those of treating sources.[75] In such situations, the ALJ must give good reasons for doing so, giving no greater scrutiny to the opinion of a treating source than to one from a non-treating source.[76]

### 4.    *Credibility*

In articulating reasons for discounting a claimant's credibility, the ALJ must provide enough of an assessment to assure the reviewing court that he or she has considered the relevant evidence and be specific enough to permit the court to trace the path of the ALJ's

---

[73] *Gayheart*, 710 F.3d at 376.

[74] *Id.*

[75] *Id.* at 379-80.

[76] *Id.* at 380.

reasoning.[77] The ALJ's credibility finding is entitled to deference and should not be disturbed absent compelling reasons.[78]

## B.     Application of standards

### 1.     Sentence six remand

Initially, I consider Engelhardt's request for a sentence six remand for the purpose of addressing two distinct groups of medical evidence not presented to the ALJ. The first body of records relates to an October 6, 2011, visit to the emergency room at St. Anne Mercy Medical Center in Toledo.[79] Engelhardt's counsel presented this evidence for the first time to the Appeals Council. Despite this evidence, the Appeals Council denied review of the ALJ's decision.[80]

Engelhardt came to the emergency room complaining of right shoulder, ankle, and neck pain as a result of a fall that had occurred three or four weeks previously. Engelhardt told the physician's assistant at Mercy that he had originally planned to see a doctor at the Health Department but could not because that doctor was no longer seeing patients there. He tried to make an appointment with that doctor at his office but was told that the charge would be $110. He decided to go to the Emergency Department at Mercy instead.

---

[77] *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

[78] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

[79] Tr. at 422-53.

[80] *Id.* at 1-6.

-15-

At Mercy a physician's assistant and physician examined Engelhardt and had x-rays of the cervical spine, right shoulder, and right ankle taken. There were no acute findings on any of the x-ray studies performed. Further, clinical examination disclosed no muscle injury to the right biceps. On movement of the right elbow, Engelhardt had a range of motion for full flexion and extension. An argument ensued upon discharge about a prescription for pain medication. He was given a prescription for 12 Percocet tablets and a referral to the orthopedic clinic.

The x-ray studies of the right ankle showed no acute fractures or dislocations. An old fracture resulting in deformity of the right calcaneus and an old fracture at the tip of the medial malleolus. This is not inconsistent with the medical evidence in the record before the ALJ at the time of decision.

Although it may be arguable that this evidence is new and relevant, being generated almost contemporaneously with the ALJ's decision, it is not material. Given no acute x-ray findings, these records show at most some aggravation of Engelhardt's shoulder and ankle pain from an injury near the time of the ALJ's decision. There are no follow up medical records offered and no indication of how long any pain may have persisted. Given the argument over prescription pain medication, and the relatively mild objective medical findings, the ALJ, if presented with this evidence, could have concluded that Engelhardt came to Mercy in an effort to get prescription pain medication that he could not obtain elsewhere. I see no basis here for concluding that there is a reasonable probability that the ALJ would have rendered a different decision based on this evidence.

-16-

The second body of medical evidence submitted in support of the motion for remand consists of a letter from a psychiatrist and psychiatric nurse at Behavioral Connections dated December 10, 2012;[81] records from two office visits with Daniel Gehling, M.D. in February of 2013;[82] and reports x-ray studies done in connection with the February, 2013 visit.[83] Engelhardt submitted this evidence for the first time as attachments to his brief on the merits in this case.

All of this evidence post-dates the ALJ's decision in this case and is, therefore, new. The evidence relates to impairments found existing and severe in the ALJ's decision and is arguably relevant. The issue is materiality. New evidence is material if a reasonable probability exists that the ALJ would have made a different decision had the evidence been available for consideration.[84]

The letter from Behavioral Connections is terse and conclusory. The sources state "this patient has been experiencing emotional problems and cannot engage in any meaningful employment." They do not identify the emotional problems or specific work-related limitations, and no treatment notes are provided. This is an opinion as to a matter reserved to the ALJ – employability – and is not material.

---

[81] ECF # 17-2 at 1.

[82] *Id.* at 2-9.

[83] *Id.* at 10-15.

[84] *Cross*, 373 F. Supp. 2d at 734.

The Gehling office notes and the x-ray studies ordered by Dr. Gehling in early 2013 must be viewed in light of the Mercy Emergency Room records from October of 2011. At that time Engelhardt sought treatment for injuries sustained in a fall three or four weeks previously. The primary complaint at that time related to the right ankle.[85] The ALJ's decision had noted a fracture of the right heel bone in 2008.[86] The 2011 x-ray studies showed old fractures in the right foot but no acute new fractures or dislocations of the right ankle.[87] The examining physician discharged Engelhardt with a diagnosis of "exacerbation of chronic ankle pain."[88]

The x-ray studies ordered by Dr. Gehling in 2013 show the same heel fracture acknowledged by the ALJ and seen on the 2011 x-ray studies.[89] The radiologist further notes "scattered degenerative changes with external fixator from tibia to first metatarsal."[90] Viewing this evidence in the light most favorable to Engelhardt, it documents some worsening in his condition after October of 2011, not his condition as of the time of the ALJ's decision. Dr. Gehling's physical examination of the right ankle on February 4, 2013, showed no problems except for joint and heel tenderness, abnormal inversion and eversion,

---

[85] Tr. at 445.

[86] *Id.* at 52.

[87] *Id.* at 452.

[88] *Id.* at 446.

[89] ECF # 17-2 at 14-15.

[90] *Id.* at 15.

and a positive single heel rise test.[91] He recommended non-surgical treatment for the right ankle with bracing and orthotics and wrote a 90-day Percocet prescription for pain.[92]

About a month later, in March of 2013, Engelhardt returned to Dr. Gehling complaining of more severe pain in his right ankle and foot.[93] Dr. Gehling repeated the physical examination done the month before with substantially identical results.[94] He refilled the Percocet prescription, gave a prescription for a hinged ankle brace, and referenced a possible subtalar fusion.[95]

This new evidence, again viewed in the light most favorable to Engelhardt, evidences that he aggravated the right ankle injury noted in the ALJ's decision by a fall sometime in September of 2011, before the ALJ issued her decision. After three to four weeks, Engelhardt showed up at an emergency room complaining of pain. Although x-ray studies and physical examination at the time were largely unremarkable, the physician issued a prescription for 12 Percocet pills and referred Engelhardt for an orthopedic follow-up at Mercy, which he apparently did not pursue.

He sought no treatment for the right ankle until February of 2013, almost a year and a half later. He again complained of right ankle pain to Dr. Gehling, apparently with the

---

[91] *Id.* at 7.

[92] *Id.*

[93] *Id.* at 2.

[94] *Id.* at 3.

[95] *Id.* at 4.

University of Toledo Medical Center. An x-ray study reported some degeneration of the ankle, and Dr. Gehling's examinations disclosed some heel and lateral tenderness and limitation on range of motion inversion and eversion. Otherwise alignment, tenderness (other than as noted), range of motion (other than as noted), strength, and stability tested normal. The ankle was free of deformity. Dr. Gehling prescribed a 90-day supply of Percocet, which he renewed in a month. He treated the impairment conservatively with prescriptions for a brace and orthotic but eventually discussed with Engelhardt the possibility of a subtalar fusion.

This new evidence, coming contemporaneously with the ALJ's decision and almost a year and half later, does not create a reasonable probability that the ALJ would have reached a different decision had that evidence been available. An aggravation of an existing condition after the relevant time period may support a new application for a later period of alleged disability but will not support a different decision for the time period of the application under review here. At best the evidence shows that Engelhardt sustained some aggravation of his right ankle condition in a fall about a month before the ALJ's decision and did not seek any treatment for three or four weeks after the fall. The objective medical evidence from that belated treatment does not suggest any significant additional injury. He received conservative treatment and a referral for an orthopedic follow up, which he did not pursue.

He sought treatment again about a year and a half later. Examination and x-ray studies showed some degeneration at that time. There is no opinion regarding limitations and no

-20-

evidence relating the condition assessed in 2013 back to the time of the ALJ's decision or before. The 2011 Mercy Emergency Room records evidence otherwise. There is no reasonable probability, therefore, that the ALJ would have reached a different decision based on the new evidence offered in support of the remand.

## 2.   *Application of the good reasons requirement of the treating physician rule*

Next, I address the question of whether the ALJ properly analyzed and weighed the opinion of Edward Wojciechowski, M.D., who was identified as a treating source. Dr. Wojciechowski opined, in a short letter dated January 7, 2010, that Engelhardt's right foot and ankle injury made him completely and totally disabled.[96] He described in some detail the injuries sustained, that "the trauma" had persisted for 16 months, and that further deterioration secondary to arthritis, chronic pain, and de-conditioning were expected.[97] He opined that the patient "can really only be in one position for less than an hour prior to having to resituate and move."[98]

Although the ALJ identifies Dr. Wojciechowski as a treating physician,[99] she did not give his opinion controlling weight. Dr. Wojciechowski's opinion is supported by no treatment notes. In fact, his one-page letter is the only evidence of his contact with Engelhardt in the record. There is no record basis for confirming his treating relationship, for

---

[96] Tr. at 362.

[97] *Id.*

[98] *Id.*

[99] *Id.* at 54.

evaluating his credentials, or testing his opinions against his own clinical observations or notes. In other words, there is no record upon which an ALJ could do a through analysis of Dr. Wojciechowski's opinion under the standards set out in the Sixth Circuit's *Gayheart* decision. The ALJ could have declined to consider him a treating source.

Having done otherwise, however, the analysis is incomplete and conclusory. The ALJ gave the opinion as to total and permanent disability little weigh because the regulations reserve that determination to the Commissioner.[100] He gave Dr. Wojciechowski's other opinions limited weight and not significant weight as out of proportion with the objective medical evidence including testing and inconsistent with Engelhardt's daily activities, which are nowhere described in the ALJ's decision.[101]

The many difficulties noted above with the ALJ's treatment of Dr. Wojciechowski's opinion aside, the real problem here is the failure of the ALJ to analyze, properly weigh, and articulate with respect to the opinion of the state agency reviewing physician, Elizabeth Das, M.D.[102] Dr. Das had the benefit of all of Engelhardt's medical records as of the date of her opinion in April of 2010, including the letter from Dr. Wojciechowski for whatever it is worth. She correctly identified that Engelhardt had an impairment of his right ankle and described in detail his 2008 surgery and the course of treatment thereafter through January

---

[100] *Id.* at 55.

[101] *Id.*

[102] *Id.* at 411-18.

of 2010.[103] She assessed him as capable of light work for purposes of lifting and carrying but limited in walking and standing to two to four hours and in sitting to six hours.[104] She also limited him to occasional pushing or pulling with his right leg.[105] She opined limitations to occasional for climbing, kneeling, crouching, and crawling.[106] She reviewed his alleged symptoms and limitations and found his symptoms consistent with the medical evidence and his represented limitations "somewhat" consistent with that evidence.[107] She acknowledged review of Dr. Wojciechowski's opinion and the absence of any treatment records in support of that opinion.[108]

I find Dr. Das's assessment thorough and certainly supported by the medical evidence, particularly under the substantial evidence standard of review. Nevertheless, the ALJ did not place much reliance in it. She commented that the opinion was "generally consistent with the evidence of record" and gave it "some weight."[109] Specifically she did not include Dr. Das's limitations on standing or walking, limitations on the use of the right lower extremity to

---

[103] *Id.* at 411-13.

[104] *Id.* at 412-13.

[105] *Id.*

[106] *Id.* at 413.

[107] *Id.* at 416.

[108] *Id.* at 416-17.

[109] *Id.* at 55.

occasional, or the postural limitations in the RFC finding[110] or in the hypotheticals to the VE.[111]

The ALJ's cursory and conclusory discussion of Dr. Das's assessment contravenes the analytical and articulation mandate for non-examining medical sources as described in *Gayheart*.[112] Because Dr. Das's RFC is the only one in the record based on all the medical evidence and is so well articulated, the ALJ's treatment of it clearly constituted error.

Whether that error is harmless is complicated by the ALJ's posing of a hypothetical to the VE providing for sedentary work.[113] The VE's answer identified a significant number of jobs existing in the national and regional economies at that level of capability.[114] Arguably this RFC of sedentary work could compensate for the standing and walking limitation articulated by Dr. Das. But it is not clear whether it can also compensate for the omission of the limitation on the use of the right leg or the postural limitations set out by Dr. Das.

**3.  *Credibility***

Finally, the ALJ also did not adequately handle credibility. *Cross v. Commissioner of Social Security* contains a detailed discussion of the regulatory requirements for assessing

---

[110] *Id.* at 51.

[111] *Id.* at 39-40.

[112] *Gayheart*, 710 F.3d at 376, 379-80.

[113] Tr. at 40.

[114] *Id.* at 40-41.

credibility.[115] Although the objective medical evidence is important in this assessment, and the ALJ has wide discretion, the ALJ must nevertheless evaluate (and articulate) upon certain factors set out in the regulations (to the extent applicable) designed to uncover pain and limitations therefrom that cannot be substantiated by objective medical evidence.

Here the ALJ makes the finding of "less than credible" but stated as the basis "inconsistent with objective medical findings in the record."[116] The regulations and case authority clearly require more analysis. I see nothing in this decision discussing Engelhardt's daily activities other than a conclusory reference that Dr. Wojciechowski's opinion is inconsistent with those activities. There is no discussion of medications or the side effects thereof and no discussion of treatment other than medication. There is certainly no unified statement in support of the credibility finding. Given that Dr. Das concluded that Engelhardt's allegations were "mostly" to "somewhat" credible, the ALJ here had to do more.

## Conclusion

Therefore, for the reasons stated above, I find that substantial evidence does not support the finding of the Commissioner that Engelhardt had no disability. Accordingly, the decision of the Commissioner denying Engelhardt supplemental security income is reversed and the matter remanded for further proceedings consistent with this opinion.

---

[115] *Cross*, 374 F. Supp. 2d at 732-33.

[116] Tr. at 54.

Engelhardt's request for a sentence six remand to consider medical evidence presented for the first time to the Appeals Council or this Court is denied.

IT IS SO ORDERED.

Dated: March 27, 2014                              s/ William H. Baughman, Jr.
                                                   United States Magistrate Judge